# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

NATALIE M. BROCKS,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-0061

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.   INTRODUCTION .......................................... 2

II.  PROCEDURAL BACKGROUND ............................ 2

III. PRINCIPLES OF REVIEW ................................ 2

IV.  FACTS ................................................. 4
     A.  Brocks' Education and Employment Background ............. 4
     B.  Administrative Hearing Testimony ...................... 4
         1.  Brocks' Testimony ............................... 4
         2.  Vocational Expert's Testimony ..................... 5
     C.  Brocks' Medical History .............................. 5

V.   CONCLUSIONS OF LAW ................................. 12
     A.  ALJ's Disability Determination ........................ 12
     B.  Objections Raised By Claimant ........................ 14
         1.  Listing 12.05C ................................. 14
         2.  Substance Use ................................. 18
     C.  Reversal or Remand ................................ 22

VI.  CONCLUSION ......................................... 23

VII. ORDER .............................................. 23

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Natalie M. Brocks on June 19, 2013, requesting judicial review of the Social Security Commissioner's decision to deny her applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Brocks asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her disability insurance benefits and SSI benefits. In the alternative, Brocks requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On June 19, 2013, Brocks filed this action for judicial review. The Commissioner filed an Answer on November 22, 2013. On January 23, 2014, Brocks filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing other work that exists in significant numbers in the national economy. On March 24, 2014, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 10, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

# III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the

2

Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the decision of the Administrative Law Judge ("ALJ") meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th

Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Brocks' Education and Employment Background

Brocks was born in 1987. She is a high school graduate. While in school, she was enrolled in special education classes. Brocks stated that she has significant difficulty with math. After high school, Brocks attempted to take classes for an AA degree, but stated she was unable to finish her first semester due to learning disabilities and hearing voices. Brocks worked as a fast food worker in the past.

### B. Administrative Hearing Testimony

#### 1. Brocks' Testimony

At the administrative hearing, Brocks testified that she was being treated for schizophrenia, anxiety, and depression. She stated that one of the symptoms that affected

4

her significantly was hearing voices (auditory hallucinations). Brocks explained that the voices "would talk to me, tell me to do certain things and I would think differently about myself and the outlook."[1] She stated that medication helped lessen the voices, but alcohol and drug use increased them. According to Brocks, the auditory hallucinations make it hard for her to focus on tasks. For example, she tried to work at a McDonald's restaurant, but her auditory hallucinations limited her ability to focus on properly preparing food orders. She was eventually let go from the McDonald's job.

## 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual with:

> no work exertional limitations. Limited to simple routine
> tasks, no fast paced work. . . . Occasional interaction with
> supervisors, co-workers, and public.

(Administrative Record at 60.) The vocational expert testified that under such limitations, particularly the limitation on interaction with supervisors, co-workers, and the public, Brocks would be unable to perform her past relevant work as a fast foods worker. However, the vocational expert found that Brocks could perform the following unskilled medium and light work: (1) hand packager (medium) (2,000 positions in Iowa and 112,000 positions in the nation), (2) hospital cleaner (medium) (5,000 positions in Iowa and 371,000 positions in the nation), (3) marker (light) (2,500 positions in Iowa and 213,000 positions in the nation), and (4) housekeeping cleaner (light) (5,000 positions in Iowa and 377,000 positions in the nation).

## C. *Brocks' Medical History*

On July 31, 2007, Brocks was referred to the Abbe Center for Community Mental Health in Cedar Rapids, Iowa, for therapy following completion of a 30-day residential

---

[1] Administrative Record at 49.

5

program at the Area Substance Abuse Council in Cedar Rapids. Carla Levi, LISW, met with Brocks and reported that:

> when she is depressed, [Brocks] feels sad and discouraged and down. . . . Her energy level is what you would call average. She is someone who becomes easily agitated and irritated. She has poor concentration and feelings of guilt. She also has feelings of worthlessness, hopelessness and helplessness. She has loss of interest and loss of motivation. . . . She does have crying spells and does feel overwhelmed with life in general. . . . She does have learning disabilities of reading comprehension and poor math skills. [Brocks] had some conduct and oppositional defiant disorder symptoms of stealing, running away and being truant from school. She has had some aggressive behavior and has gotten into fights. The oppositional defiant disorder symptoms include arguing and being defiant and blaming others for her circumstances. She states that she was an angry young person.

(Administrative Record at 499-500.) Upon examination, Levi diagnosed Brocks with major depressive disorder, history of ADHD, anxiety disorder, personality disorder, and history of alcohol and cocaine dependence in early remission in a controlled environment. Levi recommended that Brocks continue substance abuse treatment, medication management, and therapy at the Abbe Center.

On February 21, 2008, Brocks was referred by Disability Determination Services ("DDS") to Dr. Harlan J. Stientjes, Ph.D., for a psychological evaluation. Dr. Stientjes noted that Brocks' disability claim was based on bipolar disorder and problems with learning. Dr. Stientjes further noted a history of polysubstance use and abuse. Upon examination Dr. Stientjes opined that even though Brocks claimed bipolar disorder, "records suggest Major Depressive Disorder, recurrent. The overall picture is complicated by polysubstance use and abuse that has been ongoing for 4 or 5 years with

brief times of abstinence."[2] Dr. Stientjes also found mild to moderate anxiety symptoms and Cluster B personality traits. Dr. Stientjes determined that Brocks' "[a]ttention, concentration, and memory are likely consistent with general ability as assessed, but impaired by academic skill deficits."[3] Dr. Stientjes administered the WAIS-III intelligence test to Brocks. The test results provided a verbal IQ score of 73, performance IQ score of 76, and full scale IQ score of 72. Dr. Stientjes opined that Brocks' "[a]cademic skill deficits in math and written expression seem to be severe, with reading comprehension also a problem."[4] Dr. Stientjes diagnosed Brocks with major depressive disorder, borderline general cognitive ability, borderline personality disorder, and polysubstance use and abuse with three week abstinence by structure. Dr. Stientjes concluded that:

> [Brocks] can understand very simple oral and written instructions. She can master simple routines acceptably. Carryover from one day to next is likely to be impacted by depressive and personality disorder symptoms. Supervision will have to be more vigilant and supportive than typical because of cognitive, mood, and personality issues. . . . Safety judgment is poor and she is inexperienced in many ways.

(Administrative Record at 294-295.)

On March 19, 2008, Dr. Sandra Davis, Ph.D., reviewed Brocks' medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Brocks. On the Psychiatric Review Technique assessment, Dr. Davis diagnosed Brocks with borderline intellectual functioning, depressive syndrome, anxiety disorder, personality disorder, and substance addiction disorder. Dr. Davis determined that Brocks had the following limitations: moderate

---

[2] Administrative Record at 293.

[3] *Id.*

[4] *Id.* at 294.

restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Davis determined that Brocks was moderately limited in her ability to: understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Davis also determined that Brocks was markedly limited in her ability to carry out detailed instructions.

On July 21, 2010, Brocks voluntarily admitted herself to Broadlawns Medical Center in Des Moines, Iowa, for "having suicidal thoughts and addiction."[5] In reviewing her medical history, Dr. Ketan Dhadphale, M.D., noted that:

> This is the first admit here for this 22 [year old] female with extensive [history of] drug and alcohol abuse. She is from Cedar Rapids but moved here to [Des Moines] 2 years ago to attend MECCA and 'start a new life, start fresh.' She has, however, just continued her old lifestyle. She has been thr[ough] treatment facilities much of the 2 years, Bernie, MECCA, House of Mercy, others, but returns to using immediately. . . . She has had multiple entry-level jobs but has lost them all due to drug abuse. She decided two days ago that she wanted to quit using so has not had a drink or any crack for 2 days. . . . She has a [history] of multiple suicide

---

[5] Administrative Record at 396.

> attempts with drug overdoses or cutting her arms, [and] has
> over 15 hospital admits in [the] past 4 years.

(Administrative Record at 396.) Dr. Dhadphale diagnosed Brocks with depression, alcohol dependence, and cocaine abuse. Dr. Dhadphale admitted her to the psychiatric unit for her own safety and complete psychiatric evaluation. She was discharged on July 23 with no evidence of suicidal ideation. Arrangements were made for her to enter a drug treatment program.

On August 5, 2010, Brocks was admitted to the Abbe Center in Cedar Rapids, for mental health treatment. Dr. Jeffrey D. Wilharm, M.D., noted symptoms of depression, sleep difficulty, loss of energy, loss of concentration, interest, and motivation, slowed thinking, irritability, and difficulty coping. Upon examination, Dr. Wilharm diagnosed Brocks with schizophrenia, depressive disorder, polysubstance abuse, and Cluster B personality disorder. Dr. Wilharm found Brocks to be of "average" intelligence. Dr. Wilharm further found that "[t]hought processes and perceptions are noted to be adequate. . . . [Brocks] is . . . experiencing auditory hallucinations, delusions, first rank symptoms, and paranoia. Memory appears intact, insight adequate and judgment is okay."[6] Dr. Wilharm recommended medication and therapy as treatment.

On November 1, 2010, Dr. Rhonda Lovell, Ph.D., reviewed Brocks' medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Brocks. On the Psychiatric Review Technique assessment, Dr. Lovell diagnosed Brocks with borderline intellectual functioning, depressive syndrome vs. schizoaffective disorder, anxiety disorder, personality disorder, and substance addiction disorder. Dr. Lovell determined that Brocks had the following limitations: marked restriction of activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.

---

[6] Administrative Record at 486.

On the mental RFC assessment, Dr. Lovell determined that Brocks was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. Dr. Lovell concluded that:

> [Brocks] appears to meet Listing 12.09 with marked impairments in persistence and [activities of daily living], as the record indicates that she has been largely unable to sustain sobriety and has repeatedly required residential care. When [Brocks] is not using drugs/alcohol and is compliant with mental health treatment, she has a serious mental impairment that does not meet listing level severity. Without DAA [(drugs and alcohol)], formal testing shows that [Brocks] is capable of understanding and remembering instructions and procedures for basic and at least some detailed tasks. Concentration is at least sufficient to carry out tasks that do not require strictly unwavering attention to detail. [Brocks'] presentation and [activities of daily living] support her ability to interact appropriately with others on at least a limited, superficial basis. Without DAA and with treatment compliance, [Brocks] would be able to regularly complete a typical work week with no more than moderate disruption. This assessment is consistent with the overall evidence of record. No particular credibility concerns were identified.

(Administrative Record at 440.)

On April 5, 2011, Brocks was admitted to the Abbe Center for treatment. Dr. Wilharm noted that Brocks "was previously here, voluntary, in January 2011. She

discharged against medical advice in February 2011. She's been hospitalized x2 since then, last at Mercy. . . . She really did poorly off meds. She ended up in jail (public intox). She's better back on meds."[7] Upon examination, Dr. Wilharm found that Brocks "is of average intelligence[.] . . . Thought processes and perceptions are better. . . . [She] has paranoia, however, auditory hallucinations and delusions are both decreased. Cognition and memory are intact."[8] Upon examination, Dr. Wilharm diagnosed Brocks with schizophrenia, depressive disorder, polysubstance/alcohol abuse, and Cluster B personality disorder. Dr. Wilharm recommended medication, substance abuse treatment, and therapy as treatment.

On December 30, 2011, Brocks met with Dr. Mark W. Mittauer, M.D., at the Abbe Center for a mental health evaluation. Brocks informed Dr. Mittauer that she had been having "auditory hallucinations which tell her to commit suicide, such as overdosing on pills. The voices say negative things about her. However, she has not acted on her commands to harm herself at least of late and she does not intend to do so."[9] Dr. Mittauer noted that Brocks' "[t]hought process was illogical considering her auditory hallucinations but coherent and goal-directed. . . . Insight, impulse control, and social judgment were poor in the past when she abused illicit drugs but are presently intact in the context of not currently using alcohol or illicit drugs[.]"[10] Upon examination, Dr. Mittauer diagnosed Brocks with schizophrenia, depressive disorder, alcohol dependence in early full remission, and polysubstance abuse in early full remission. Dr. Mittauer recommended medication as treatment.

---

[7] Administrative Record at 2837.

[8] *Id*. at 2840.

[9] Administrative Record at 2831.

[10] *Id*. at 2834.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Brocks is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the

12

> fourth step asks whether the claimant has the residual
> functional capacity to do past relevant work. If so, the
> claimant is not disabled. Fifth, the ALJ determines whether
> the claimant can perform other jobs in the economy. If so, the
> claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Brocks had not engaged in substantial gainful activity since October 18, 2007. At the second step, the ALJ concluded from the medical evidence that Brocks has the following severe impairments: borderline intellectual functioning, major depressive disorder vs. schizoaffective disorder, anxiety disorder, and polysubstance abuse. At the third step, the ALJ found that Brocks did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Brocks' RFC as follows:

> [Brocks] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: simple, routine tasks; no production rate pace, but can perform goal oriented work with no close attention to detail; only occasional[] interaction with co-workers, supervisors, and the public.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Brocks was unable to perform any of her past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Brocks could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Brocks was not disabled.

### B. Objections Raised By Claimant

Brocks argues that the ALJ erred in two respects. First, Brocks argues that the ALJ erred by failing to find that she was presumptively disabled because she equals Listing 12.05C for intellectual disability. Second, Brocks argues that the ALJ failed to follow the required procedures, and failed to properly analyze whether alcohol and/or drug abuse was a material factor contributing to her disability.

### 1. Listing 12.05C

Brocks argues that the ALJ erred by not addressing whether she was presumptively disabled under Listing 12.05C. Brocks points out that even though she has consistently been diagnosed with borderline intellectual functioning, and the ALJ considered multiple listing categories of mental impairments, the ALJ inexplicably failed to consider Listing 12.05C, for intellectual disability. Brocks concludes that this matter should be remanded because "the ALJ failed to articulate any basis for not finding -- for not considering -- [whether] Ms. Brocks [] equaled Listing 12.05C."[11]

Listing 12.05C provides in pertinent part:

---

[11] Brocks' Brief (docket number 17) at 25.

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006), the Eighth Circuit summarized the requirements of Listing 12.05C as follows:

> a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing additional and significant work-related limitation of function.

*Id.* at 899.

Here, in February 2008, Brocks was administered an adult intelligence test and scored a full IQ score of 72 and a verbal IQ score of 73. Clearly, Brocks does not meet the first requirement of Listing 12.05C, as her full IQ score is not between 60 and 70. Thus, the ALJ apparently believed that he was not required to address Listing 12.05 in his decision due to Brocks' full IQ score and verbal IQ score being above 70. While there is no error in the ALJ's implicit conclusion that Brocks does not *meet* the requirements of Listing 12.05C, Brocks argues that the ALJ erred because he did not address whether her impairments *equaled* Listing 12.05C. Brocks is correct.

In *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003), the Eighth Circuit Court of Appeals pointed out that the Commissioner issued instructions for determining medical

equivalence in the Program Operations Manual System ("POMS"). *Id.* at 424. The applicable POMS provision for determining medical equivalence and mental retardation under Listing 12.05C states in pertinent part:

> Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment. The criteria of this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation or function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056. In *Shontos*, the claimant had an IQ score of 72, and medical evidence from her treating doctors which indicated that she had difficulty with anxiety and depression which would interfere with her ability to work. 328 F.3d at 424. The ALJ who considered Shontos' claim did not consider the POMS guidelines. *Id.* The Eighth Circuit determined that the ALJ's failure to consider the POMS guidelines was error. *Id.* Specifically, the Eighth Circuit found that "[a]lthough POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." *Id.* (citing *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000); *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir. 1999)). The Eighth Circuit concluded that Shontos' impairments, including borderline intellectual functioning, psychiatric affective disorders, and physical disabilities, were medically equivalent to Listing 12.05C, and remanded the case for an award of benefits. *Shontos*, 328 F.3d at 427.

Similar to *Shontos*, Brocks had a full IQ score of 72 and verbal IQ score of 73. Dr. Stientjes, a consultative examining doctor, and Drs. Davis and Lovell, both non-examining consultative doctors, diagnosed Brocks with borderline intellectual functioning.

These doctors also diagnosed Brocks with depressive disorder, anxiety disorder, and personality disorder. Drs. Wilharm and Mittauer, both treating doctors, also diagnosed Brocks with depressive disorder and personality disorder. Drs. Wilharm and Mittauer also both diagnosed Brocks with schizophrenia.

There are no opinions from treating or examining doctors as to Brocks functional abilities, but Dr. Davis, a non-examining doctor, opined that Brocks was moderately limited in her ability to: understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Davis also determined that Brocks was markedly limited in her ability to carry out detailed instructions.

Similarly, Dr. Lovell, another non-examining doctor, opined that Brocks was moderately limited in her ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately

to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.

Additionally, the Court notes that the record demonstrates that Brocks required special education throughout her schooling. Moreover, Dr. Stientjes found that Brocks had "[a]cademic skill deficits in math and written expression . . . with reading comprehension also a problem."[12]

Based on the foregoing evidence in the record, the Court finds that the ALJ's failure to address — let alone follow — the POMS guidelines; or even consider whether Brocks' borderline intellectual functioning combined with her other significant mental impairments, were medically equivalent to Listing 12.05C, was error.[13] *See Shontos*, 328 F.3d at 424-27. Accordingly, the Court determines that remand is necessary. On remand, the ALJ must determine whether Brocks' impairments are medically equivalent to Listing 12.05C.

### 2. *Substance Use*

Brocks argues that the ALJ failed to follow the required procedures for determining whether alcohol and/or drug abuse was a material factor contributing to her disability. Brocks further argues that the ALJ failed to even analyze whether alcohol and/or drug abuse was a material factor contributing to her disability, as required by social security law and regulations. Brocks maintains that this matter should be reversed and remanded for further consideration of whether alcohol is a material factor contributing to her disability.

In 1996, Congress amended the Social Security Act to eliminate benefits for disabilities arising from addiction to alcohol or other drugs. *See* Pub. L. No. 104-121, 110 Stat. 847; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003)

---

[12] Administrative Record at 294.

[13] The Court notes that at step two of the five-step sequential evaluation, the ALJ determined that Brocks' severe impairments included borderline intellectual functioning, major depressive disorder vs. schizoaffective disorder, and anxiety disorder. *See* Administrative Record at 15.

(discussing the 1996 Congressional amendment); *Jackson v. Apfel*, 162 F.3d 533, 537 (8th Cir. 1998) (same). The regulations implemented this law at 20 C.F.R. § 404.1535 (relating to applications for disability insurance benefits) and 20 C.F.R. § 416.935 (relating to applications for SSI benefits). The two sections are identical and provide as follows:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> (b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.
>
> > (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
> >
> > (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
> >
> > (I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
> >
> > (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug

> addiction or alcoholism and we will find that your drug
> addiction or alcoholism is not a contributing factor
> material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

According to the regulations, the ALJ must first determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1535, 416.935 (*"If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). "The ALJ must reach this determination initially . . . using the five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694 (citation omitted).

If the ALJ determines that all of a claimant's limitations, including the effects of substance use disorders, show that the claimant is disabled, then the ALJ "must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95 (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2)). "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit*, 218 F.3d at 903 (citations omitted). The claimant carries the burden of proving that alcoholism or drug addiction is not a material factor to the finding of disability. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms, on the issue of materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann*, 348 F.3d at 693 (citation omitted). Accordingly, the ALJ is required to develop a full and fair record and support his or her conclusions with

substantial evidence. *Id.* at 695. In summary, "[o]nly after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may [the ALJ] then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id.*

Here, the ALJ did not find that Brocks was disabled, even when considering her alcohol and drug abuse. Specifically, in his decision, the ALJ stated that "[a]lthough the State Agency previously found factors of materiality with respect to substance abuse, the undersigned elects to proceed applying the sequential evaluation. Further, evidence shows early remission of substance abuse issues."[14] In other words, the ALJ did not determine whether Brocks' drug addiction and alcoholism was a contributing factor material to the determination of disability because the ALJ did not first find that Brocks was disabled under the five-step sequential test. *See* 20 C.F.R. §§ 404.1535, 416.935 ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). Because in properly applying the five-step sequential evaluation, the ALJ did not find Brocks disabled due to her impairments, including polysubstance abuse, the analysis for determining whether drug addition or alcohol abuse is a contributing factor material to the determination of disability was not necessary. *See* Brueggemann, 348 F.3d at 694; *see also* 20 C.F.R. §§ 404.1535, 416.935 (providing that an ALJ must first determine whether a claimant is disabled using the five-step test before proceeding to consideration of whether alcohol or drug abuse is a material contributing factor to the disability determination). Accordingly,

---

[14] Administrative Record at 15.

the Court concludes that Brocks' argument with regard to substance use analysis found in the Social Security Regulations is misplaced and without merit.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to consider whether Brocks' borderline intellectual functioning combined with her other significant mental impairments, was medically equivalent to Listing 12.05C. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must determine whether Brocks' impairments are medically equivalent to Listing 12.05C.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 17th day of July, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA